```
 1  PETER C. McMAHON (State Bar No. 161841)
    PAMELA L. KELLY (State Bar No. 230721)
 2  McMAHON SEREPCA LLP
    985 Industrial Road, Suite 201
 3  San Carlos, CA  94070-4157
    Tel: 650-637-0600
 4  Fax: 650-637-0700

 5  Attorneys for Plaintiff
    NETSUITE, INC.
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NETSUITE, INC., a California corporation,<br><br>       Plaintiff,<br><br>vs.<br><br>CIPC WORLDWIDE HOLDINGS CORPORATION, a corporation, and DOES One through Ten, inclusive,<br><br>       Defendants. | CASE NO: 3:07-cv-05235-SI<br><br>**SEPARATE CASE MANAGEMENT STATEMENT** |

**COMES NOW**, plaintiff NetSuite, Inc. ("NetSuite" or "Plaintiff"), pursuant to Civil Local Rule 16-9 and the Standing Order for All Judges of the Northern District California Contents of Joint Case Management Statement, and files this its <u>Separate</u> Case Management Statement[1] - because, despite repeated and varied attempts to contact defendant CIPC Worldwide Holdings Corporation ("Defendant"), Defendant never responded to NetSuite's attempts.

### Jurisdiction and Service

This case was originally filed on or about August 29, 2007, in the Superior Court of California, County of San Mateo. On or about October 12, 2007, Defendant removed this case pursuant to 28 U.S.C. §§ 1332, 1441(b), and 1446, on the grounds that the action is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1332, and is one which may be removed to this Court by defendant pursuant to 28 U.S.C. § 1441(b).

At the time of filing of the complaint, NetSuite was a California corporation, with its principal place of business at 2955 Campus Drive, San Mateo, California 94403, and Defendant averred that it was a Delaware corporation, with its principal place of business at 108 West 13th Street, Wilmington, Delaware 19801.

Several facts should be noted by the Court at this time. First, at the time that NetSuite contracted with Defendant, NetSuite was informed and believed that Defendant was a foreign Canadian corporation, with its principal place of business located at 1560-555 West Hastings, Vancouver, British Columbia, Canada V5B 4N4. Second, in late November 2007, in preparation for its Initial Public Offering, NetSuite re-incorporated itself as a Delaware corporation. Third, NetSuite has learned that Defendant's incorporation status in Delaware has been "forfeited." See McMahon Decl., ¶ 12, Ex. H, submitted herewith.

At this time, all parties have been served. In the event that NetSuite seeks and is granted leave of this Court to amend its complaint to add Mr. Truesdale individually, it will serve him according to the instructions of the Court at that time.

///

---

[1] *See* the Declaration of Peter C. McMahon ("McMahon Decl."), submitted herewith, describing the unsuccessful efforts of NetSuite to obtain cooperation from Defendant to prepare a Joint Case Management Statement.

SEPARATE CASE MANAGEMENT STATEMENT

## Facts

<u>NetSuite's Complaint</u>:

NetSuite and Defendant executed several documents which form the contractual relationship between the parties. The centrally controlling document is the "NetSuite License Agreement," which was executed on March 31, 2007 by Defendant and by NeSuite on April 23, 2007 ("License Agreement").Under the terms of the License Agreement, Estimate No. 58630, which was executed by the parties on March 30, 2007, was "incorporated by reference," and it set forth the features and functionality initially purchased by Defendant. The parties also executed a document entitled "April 19, 2007 Statement of Work ("April 19, 2007 SOW"), which set forth the "Professional Services" that NetSuite was to provide to Defendant in conjunction with the implementation of NetSuite's Online Application assistance from Defendant. The SOW was also "incorporated by reference" into the License Agreement.

Subsequently, although required to provide assistance under the April 19 2007 SOW, Defendant missed several meetings related to the implantation. Defendant then informed NetSuite that it wanted to perform a different implementation to focus on another of Defendant's business opportunities. Accordingly, on or about May 31, 2007, the parties executed Estimate No. 62644 and a "May 24, 2007 Statement of Work ("May 24, 2007 SOW"). Thereafter, Defendant indicated that it wanted to add 300 additional users under the License Agreement. Accordingly, on or about June 27, 2007, Defendant executed Estimate No. 64289. On June 29, 2007, the parties executed an amendment to Estimate No. 64289. For ease of reference, the License Agreement, the SOWs, the Estimates, and the Amendment will hereinafter collectively be referred to as the "Agreement."

According to the Agreement, Defendant was to pay a total fee of $498,266.46 for the license fees, support, and Professional Services described in the in the Estimates (Numbered 58630, 62644 and 64289). The fee to be paid was due as follows: Estimate 58630 - $115,810.51(due net 30 days); Estimate 62644 - $21,200.00 (due net 30 days); Estimate 64289 - $361,255.95 (due 1/3 net 60 days; 1/3 due net 210 days; 1/3 270 days).

NetSuite commenced performance on the Agreement, and continued to actively perform through July 2007. During the time, NetSuite was performing under the Agreement, it sent Defendant a series of Invoices according to the due dates listed above. On May 25, 2007, CIPC failed to pay NetSuite $115,810.51 as required under the Agreement. This constituted a breach of the Agreement. On June 25, 2007, CIPC failed to pay NetSuite $21,200.00 as required under the Agreement. This constituted a breach of the Agreement. On or about August 27, 2007, CIPC further breached the Agreement by failing to pay $120,406.61 to NetSuite. Similarly, Defendant breached the Agreement by failing to pay according to the terms of Estimate 64289. Despite repeated requests for payment, Defendant has continued to refuse to pay NetSuite.

Based upon these facts, NetSuite filed its complaint for Breach of Contract, Breach of Covenant of Good Faith and Fair Dealing, and the common count of Work, Labor, Services (*Indebitatus Assumpsit*) ("Complaint").

Defendant's Counterclaims:

Defendant's allegations against NetSuite are contrived and frivolous. Although Defendant's allegations admit and track many of the "background" allegations made by NetSuite in its Complaint, Defendant's allegations venture largely into fantasy after paragraph 18 of its Counterclaim.

Defendant asserts that on or about July 6, 2007, Truesdale attempted to "create" 300 user accounts through NetSuite's online service. Allegedly, when he was unable to do so, he contacted NetSuite's "Gold Support" to seek assistance. According to the fiction alleged by Defendant, NetSuite did not provide the Gold Support promised and Defendant was forced to cancel its training, and eventually made the decision to hire NetSuite's competitor – Salesforce.com. NetSuite's "failure," according to Defendant caused it to log "8,000 man hours" and to incur lost revenue opportunities of $5,000,000,000.00. The allegations are preposterous.

Based upon these allegations, Defendant counterclaimed for Fraud & Rescission; Promise Made Without Intent to Perform & Rescission; Negligent Misrepresentation &

Rescission; Mistake & Rescission; Breach of Contract; and Breach of the Covenant of Good Faith & Fair Dealing.

### Legal Issues

The legal issues in this matter are straightforward, to wit: Whether Defendant breached the terms of its Agreement with NetSuite? Or whether NetSuite breached the terms of the same Agreement? Similarly, whether in inducing Defendant to execute the Agreement, NetSuite engaged in conduct entitling Defendant to rescind the Agreement?

### Motions

There are no prior motions. There are no pending motions. As stated above, NetSuite may seek leave to amend its Complaint to add a cause of action for Fraud and/or to add Josh T. Truesdale as an individual defendant. NetSuite also believes that Defendant will not cooperate in the discovery process, necessitating motions to compel by NetSuite. NetSuite also contemplates bring motions for sanctions against Defendant for its anticipated future conduct.

### Amendment of Pleadings

Following the receipt of information provided to NetSuite during the course of this case (including that discussed below), NetSuite is contemplating amending its complaint to name an individual, Joshua T. Truesdale, as an "alter ego" individual defendant. Despite the fact that it appears that Mr. Truesdale is a resident of Canada, NetSuite believes that this Court will have personal jurisdiction over Mr. Truesdale pursuant to case such as *Certified Building Products, Inc. v. NLRB*, 528 F.2d 968, 969 (9th Cir. 1976) and *Indiana Plumbing Supply, Inc. v. Standard of Lynn, Inc.*, 880 F. Supp. 743, 750 (CD CA 1995).

In addition, based on the information received by NetSuite during its investigation of this matter, which includes a series of articles written in the Vancouver Sun outlining asserting that Joshua T. Truesdale was formerly known as Scott Frederick Byers, who was convicted of fraud in 2001 in New Brunswick relating to the sale of Sony PlayStation 2 game consoles over the Internet, and who it appears has been arrested by Canadian authorities for a scam relating to iPhones, NetSuite is also contemplating adding a cause of action for Fraud and Defendant and/or Truesdale. *See* McMahon Decl., ¶¶ 9, 10.

### Evidence Preservation

NetSuite has periodically reminded employees involved in the transaction with Defendant to preserve emails, communications, and other documents pertaining to CIPC. In addition, NetSuite has preserved Defendant's account with CIPC.

### Disclosures

NetSuite has not provided its Initial Disclosures because the parties have not engaged in the early conference provided by F.R.C.P. Rule 26(f).

NetSuite hereby objects to its production of Initial Disclosures at this time, and respectfully requests that the Court relieve it of its obligations to provide Initial Disclosures, on the grounds that the circumstances of this case warrant relief from such cost and obligation. At such time that it may become possible to exchange Initial Disclosures, or upon later direction of the Court, NetSuite will provide such Disclosures.

### Discovery

The parties have not yet commenced discovery, nor have they discussed a "discovery plan" due to Defendant's failure to retain counsel.

As stated above, under the circumstances of this case, Initial Disclosures should not be required at this time.

Discovery in this matter should be straightforward. It is NetSuite's position that the limitations imposed by the Federal Rules of Civil Procedure are in general appropriate for this matter, with a few exceptions:

(1) NetSuite respectfully requests that the Court order that the deposition of Joshua T. Truesdale be permitted to last two – seven hour days;

(2) NetSuite respectfully requests that the Court order that any depositions of NetSuite's personnel occur within 20 miles of such witnesses' residence, or within 20 miles of NetSuite's headquarters in the sole discretion of NetSuite; and

(3) NetSuite respectfully requests that the Court order that NetSuite be permitted to "produce" documents and electronic information in its "native" format. Specifically, NetSuite proposes that to the extent that responsive documents or electronic information are available

through NetSuite's electronic online application, that NetSuite be permitted to "produce" such information by making such information accessible via the Internet through the use of a user name and password.

At this juncture, besides Mr. Truesdale, NetSuite is aware of three other witnesses that it plans to depose. 25 interrogatories, and a reasonable number of document requests should meet NetSuite's discovery requirements.

### Class Actions

Not Applicable.

### Related Cases

There are no known related cases.

### Relief

NetSuite Against Defendant:

NetSuite seeks total damages in the sum of approximately $498,266.46 dollars, based upon Defendant's breaches of contract, plus contractual attorney's fees and costs. Specifically, NetSuite seeks recovery as follows: (1) From Estimate 58630 - $115,810.51; (2) From Estimate 62644 - $21,200.00; and (3) From Estimate 64289 - $361,255.95.

Similarly, NetSuite seeks a sum exceeding $498,266.46 dollars, based upon Defendant's breach of the covenant of good faith and fair dealing.

In addition, notwithstanding recovery on the first two causes of action, NetSuite claims damages in the sum of not less than $20,000.00 dollars, for the reasonable value of the work, labor, and services that NetSuite provided, or according to proof, plus interest, late charges, costs of collection and other damages in an amount according to proof, as stated in the Third Cause of Action herein.

Defendant's Counterclaims Against NetSuite:

Although expressly limited by the Agreement, Defendant seeks $5,000,000,000.00 of consequential damages against NetSuite, and unspecified general and compensatory damages. In addition, Defendant seeks rescission of the Agreement.

///

### Settlement and ADR

Prior to the initiation of litigation, NetSuite explored settlement with Defendant. Defendant offered to settle the matter on terms completely unacceptable to NetSuite.

This case was order to the Alternative Dispute Resolution Multi-Option Program. There have been no formal discussions regarding settlement or ADR since the commencement of the litigation due to Defendant's failure to pay its former counsel, and said counsel's subsequent Court-approved withdrawal from this matter.

Generally, NetSuite is open to Mediation or ENE, as a form of ADR in this matter.

### Consent to Magistrate Judge For All Purposes

Defendant refused to consent for a Magistrate for all purposes.

### Other References

NetSuite does not believe that this matter is suitable for reference to binding Arbitration, a special master, or the Judicial Panel on Multi-District Litigation.

### Narrowing of Issues

Many of the potential factual issues in this matter have been narrowed by virtue of Defendant's admissions in its Answer. To the extent that other factual issues remain, certain issues will likely be resolved by the submission of documents or other evidence which objectively establish the chain of events in this matter. Counsel should exchange and discuss these documents and should seek to stipulate to the authenticity, timing, and legal effect of such documents and evidence prior to trial in this matter. To the extent some factual issues will not be stipulated to but are appropriate for a ruling by the Court i.e., by Judicial Notice etc., motions *in limine* should be filed to further narrow the issues.

### Expedited Schedule

NetSuite believes that this matter should be expedited, provided that Defendant cooperates in discovery. Otherwise, this matter will be artificially delayed.

///

///

### Scheduling

NetSuite respectfully submits that due to Defendant's utter and knowing failure to comply with the Federal Rules of Civil Procedure, the Local Civil Rules and the Standings Orders of this Court, that terminating sanctions should be imposed on Defendant – on the grounds that despite repeated, varied, and persistent effort of Defendant's own counsel, and NetSuite's counsel, Defendant has willfully ignored the Rules and the Orders of this Court. *See* F.R.C.P. 16(f); *see also Tower Ventures, Inc.* v. *City of Westfield*, 296 F.3d 43, 45-46 (1st Cir. 2002) (court may impose dismissal of action as a sanction for violation of court orders without consideration of lesser sanctions because disobedience of court orders constitutes extreme conduct).

### Trial

In the event that this matter actually gets to trial, NetSuite expects trial in this matter to last 5-10 days – depending upon whether Defendant's frivolous claims are summarily dismissed and whether this ultimately goes forward as a bench trial or a jury trial. While hereby expressly reserving its rights, NetSuite is currently open to this matter proceeding as a bench trial.

### Disclosure of Non-party Interested Entities or Persons

NetSuite has filed its "Certification of Interested Entities or Persons," which is required by Civil Local Rule 3-16. In addition, pursuant to this Court's Order, NetSuite states as follows: (1) There is no "parent corporation" that owns more than 10% of NetSuite's stock; (2) There is no "publicly traded" company that owns more than 10% of NetSuite's stock; (3) There are no persons, associations of persons, firms, partnerships, corporations (including parent corporations), or other entities other than the parties themselves known by the party to have either: (a) a financial interest (of any kind) in the subject matter in controversy or in a party to the proceeding, except for Mr. Errol Getner and Todd Giuntini, who was (are) employees of NetSuite, and thus could receive a sales commission on the underlying "deal," which is the subject of the litigation; or (b) any other kind of interest that could be substantially affected by the outcome of the proceeding.

**Other Matters**

It is anticipated by NetSuite that Defendant will not participate in this case. Accordingly, in order to conserve Judicial resources, and lessen the burden to the victim NetSuite in this matter, NetSuite respectfully requests the Court to enter terminating sanctions against Defendant as soon as reasonably possible.

Dated: March 21, 2008

McMAHON SEREPCA LLP

_____
Peter C. McMahon, Esq.
Attorneys for Plaintiff
NETSUITE, INC.